Case # 13-56250

# IN THE UNITED STATED COURT OF APPEALS FOR THE NINTH CIRCUIT

**Lisa Liberi et al,**                     )
**Plaintiffs/Appellees**                   )


**V**                                      )


**Orly Taitz, Defend Our**                 )
 **Freedoms,**                             )


**Defendants/Appellants**                  )

Appeal from the United States District Court for the Central District of California

Civil Action No.:
8:11-CV-00485-AG (AJWx)


## REPLY BRIEF BY APPELLANT,
## DEFEND OUR FREEDOMS FOUNDATION




Dr. Orly Taitz, , ESQ
29839 Santa Margarita ste 100
Rancho Santa Margarita CA 92688
949-683-5411 Fax 949-766-7687
Orly.taitz@gmail.com
 Counsel for Defendant/Appellant DOFF

1

# **TABLE OF**

# **CONTENTS**

I . Reply to Plaintiffs' Introductory Arguments . . . . . . . . . . . . . . . . . .p. 2

II.     Plaintiffs Fail to Show That Taitz's Conduct as Alleged in Their First Amended Complaint Does Not Come Within California's Anti-SLAPP Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . .p 2 1

III. Plaintiffs Fail to Meet Their Burden to Demonstrate a Probability that they Will Prevail on Their First Amended Complaint . . . . . . . . p 30

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .p36

Certificate of compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .p37

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .p38

## TABLE OF AUTHORITIES

*Batzel v. Smith*, 333 F.3d 1018, 1025 (9th Cir. 2010)...........................p2

*Briggs v. Eden Council for Hope & Opportunity*, 19 Cal.4th 1106, 1115 (1999)..............................................................................................p23

*Burt v Danforth*, 742 F. Supp. 1043, 1046 (E.D. Mo. 1990)...........................p14

*Cunningham v. Gates*, 229 F.3d 1271, 1284-1285 (9th Cir. 2000).................p8

*Damon v. Ocean Hills Journalism Club*, 85 Cal.App.4th 468, 472 (2000).....p26

*Davis v Louisiana State University*, 876 F.2d 412, 415 (5th Cir.1989).............p14

*Davis v. Wakelee*, 156 U.S. 680, 689, 39 L. Ed. 578, 15 S. Ct. 555 (1895)......p21

*Diamond Door Co. v. Lane-Stanton Lumber Co.*, 505 F.2d 1199, 1206 (9th Cir. 1974) ...............................................................................................p17

*Dwight R. v. Christy B.*, 212 Cal.App. 4th 697 (2013)......................................p23

*Du Charme v. International Brotherhood of Electrical Workers*, 110 Cal. App. 4th 107, 109 (2003)....................................................................................p29

Ellis v. Great Southwestern Corp., 646 F.2d 1099, 1103-11 (5th Cir. 1981)....p15

*Gardner v. Martino*, 563 F.3d 981, 989 (9th Cir. 2009)....................................p22

Gerbosi v. Gaims, Weil, West & Epstein, LLP, 193 Cal.App.4th 435, 446 (2011)................................................................................................p24

*Hutchinson v. Proxmire*, 443 U.S. 111, 135, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979)................................................................................................p27

*Johnson v. Ralphs Grocery Co.*, 204 Cal.App.4th 1097 (2012)......................p23

*Keller v. Elec. Arts Inc. (In re NCAA Student-Athlete Name & Likeness Licensing Litig.)*, 724 F.3d 1268, 1272 (9th Cir. 2013)...........................p2

*Lefebvre v. Lefebvre*, 199 Cal.App.4th 696 (2011)............................................p23

*Makaeff v. Trump University, LLC*, 715 F.3d 254 (9th Cir. 2013).....................p9

*Manley v. Engram*, 755 F.2d 1463, 1467 & n.10 (11th Cir. 1985)...................p13

Martin v. Stokes, 623 F.2d 469, 472-73 (6th Cir. 1980)....................................p15

*Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1296-97 (9th Cir. 1999)..................................................................................................................p8

*Mitchell v. Forsyth*, 472 U.S. 511, 525-27 (1985)...............................................p7

*Moy v. United States*, 906 F.2d 467, 469-71 (9th Cir. 1990) ...........................p3

*Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 967 (9th Cir.1993)..............p13

*Nelson v. International Paint Co.*, 716 F.2d 640, 643 (9th Cir. 1983).............p13

*New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).......................................p21

*Nygard, Inc. v. Uusi-Kerttula*, 159 Cal.App.4th 1027, 1042 (2008)................p26

*Obsidian Finance Group, LLC v. Cox*, 740 F.3d 1284 (9th Cir. 2014).............p22

*O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1063 n.3 (9th Cir. 2007).......p17

Reyno v. Piper Aircraft Co., 630 F.2d 149, 165 (3d Cir. 1980).......................p15

*Rivero v. American Federation of State, County, and Municipal Employees*, AFL-CIO, 105 Cal.App.4th 913 (2003). (AB, 24.)...........................................p28

Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc., 689 F.2d 982, 991-93 (11th Cir. 1982)....................................................................................p15

*Troy Group, Inc. v. Tilson*, 364 F.Supp.2d 1149, 1153 (2005).........................p26

*Tuchscher v. San Diego Unified Port Dist.*, 106 Cal.App.4th 1219, 1233 (2003)................................................................................................................p30

*United States ex rel. Newsham v. Lockheed Missiles & Spice Co.*, 190 F.3d 963 (9th Cir. 1999).....................................................................................................p9

*Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)....p14

*Verizon Del., Inc. v. Covad Communs. Co.*, 377 F.3d 1081, 1092 (9th Cir. Cal. 2004)....................................................................................................p20

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003)..............p9

*Wang v. Hartunian*, 111 Cal.App.4th 744 (2003)..............................................p22

*Weinberg v. Feisel*, 110 Cal.App.4th 1122 (2003)...........................................p25

28 U.S.C. ' 1291..................................................................................................p7

28 U.S.C. ' 1404(a)...........................................................................................p11

Fed. R. Civ. P. Rule 12(6)..................................................................................p20

Cal. Civ. Code Section 47(b).............................................................................p23

Section 425.l6(e)(1)............................................................................................p22

Moore, Federal Practice para. 0.145[4.-5]; Note, 63 Corn. L. Rev. 149, 160 (1977)..................................................................................................................p16

This court has granted a motion by appellant Orly Taitz in Appeal 13-56253 to consolidate appeals of Orly Taitz and the appeal at hand by Defend Our Freedoms Foundation (DOFF) 13-56250.

Part I and II of the consolidated brief contained herein.

Part III of the consolidated brief contained in the reply in case 13-56253

## I. REPLY TO PLAINTIFF'S INTRODUCTORY ARGUMENTS

**The District Court's Order Denying DOFF's Request for Leave to File an Anti-SLAPP Motion to Strike is Appealable, Including Under the Collateral Order Doctrine**

Denial of an anti-SLAPP motion under California law is immediately appealable under the collateral order doctrine. *Batzel v. Smith*, 333 F.3d 1018, 1025 (9th Cir. 2010). *Keller v. Elec. Arts Inc. (In re NCAA Student-Athlete Name & Likeness Licensing Litig.)*, 724 F.3d 1268, 1272 (9th Cir. 2013).

The District Court denied DOFF's request for leave to file an anti-SLAPP motion

2

to strike under the Court's June 14, 2011 Order, requiring that a party seek and be granted leave to file any motion. DOFF has appealed from the Order denying its request to file such a motion. Such Order is appealable.

In the Ninth and other Circuits, appeal may be taken from an Order precluding a party from filing pleadings. For example, in *Moy v. United States*, 906 F.2d 467, 469-71 (9th Cir. 1990), the District Court entered an Order precluding Plaintiff, as a vexatious litigant, from filing future cases without pre-filing review and leave to file.

Plaintiff appealed from that Order. The Court of Appeals held that the Order was appealable as most aptly characterized as a final order precluding the clerk from accepting papers from Moy without leave of court. It, therefore, immediately affects his rights. Thus, we have jurisdiction to hear the case. *Id.* at 471.

The Court further held: Every appellate court that has considered the issue to date has ultimately found that it has jurisdiction to review the kind of order involved in this case, because it is a kind of injunction which affects the rights of litigants. *Id.* at 470. It concluded that it had jurisdiction to review orders which

3

preclude particular litigants from filing their pleadings. We have that jurisdiction even if the order is only directed to the clerk and even if no pleading has yet been rejected. *Ibid.*

Here, the Order from which DOFF has appealed has the same effect as that in *Moy* - it immediately affects [DOFF's] rights which preclude particular litigants from filing their pleadings by denying DOFF its statutory right under California's anti-SLAPP statute and related Ninth Circuit law to protect its Constitutional rights of freedom of expression and to seek redress for grievances via an anti-SLAPP motion. Thus, under the authority of *Moy*, appellate jurisdiction exists herein. As stated in Batzel,

The Order appealed from by DOFF is also reviewable under the collateral order doctrine for the reasons expressed in *Batzel* and its progeny. As discussed in Batzel, to come within this doctrine a district court decision must (1) be "conclusive," (2) "resolve important questions completely separate from the merits," and (3) "render such questions effectively unreviewable on appeal from a final judgment in the underlying action." *Batzel*, at 1025 (citing *Digital Equip. Corp. v. Desktop Direct, Inc*., 511 U.S. 863, 867-868 (1994)).

4

This Court in *Batzel* found that all three factors were met. First, the court's denial of Cremers's anti-SLAPP motion is conclusive as to whether the anti-SLAPP statute required dismissal of Batzel's suit. If an anti-SLAPP motion to strike is granted, the suit is dismissed and the prevailing defendant is entitled to recover his or her attorney's fees and costs. See ' 425.16(c). If the motion to strike is denied, the anti-SLAPP statute does not apply and the parties proceed with the litigation. *Batzel*, at 1025.

Here, the District Court's denial of DOFF's request for leave to file an anti-SLAPP motion is similarly conclusive as to whether California's anti-SLAPP statute requires dismissal of DOFF. Denial of DOFF's request has the same effect as if it had been given leave to file that motion, and it was then denied where the parties proceed with the litigation.

Second, The district court's denial of Cremers's motion to strike resolved the threshold question whether Batzel's defamation suit should be dismissed by pre-trial motion. Denial of an anti-SLAPP motion resolves a question separate from the merits in that it merely finds that such merits may exist, without

5

evaluating whether the plaintiff's claim will succeed. *Ibid.*

Denial of DOFF's request had the same effect as denial of Cremers's motion in *Batzel* - it resolved the threshold question whether [Plaintiffs'] defamation suit should be dismissed by pre-trial motion, as to DOFF, a question likewise separate from the merits as expressed in *Batzel*.

The purpose of an anti-SLAPP motion is to determine whether the defendant is being forced to defend against a meritless claim. The anti-SLAPP issue therefore exists separately from the merits of the defamation claim itself. *Ibid.* Here, DOFF by denial of its rights to bring an anti-SLAPP motion is being forced to defend against a meritless claim that should be dismissed under the anti-SLAPP statute.

Third, because the anti-SLAPP motion is designed to protect the defendant from having to litigate meritless cases aimed at chilling First Amendment expression, the district court's denial of an anti-SLAPP motion would effectively be unreviewable on appeal from a final judgment. *Ibid.* For the same reasons, denial of DOFF's request would be unreviewable on appeal from a final judgment.

6

As expressed by this Court, the anti-SLAPP statute and its legislative history demonstrates that California lawmakers wanted to protect speakers from the trial itself rather than merely from liability... Without [the right of immediate appeal], a defendant will have to incur the cost of a lawsuit before having his or her right to free speech vindicated.... *Ibid.* Denial of DOFF's request violates the policy behind the anti-SLAPP statute, including to protect speakers from the trial itself rather than merely from liability....

Denial of DOFF's requests also violates its rights to the protection of the anti-SLAPP statute as a substantive immunity from suit.... which is an appealable final decision within the meaning of 28 U.S.C. ' 1291 notwithstanding the absence of a final judgment. *Id.* at 1025-1026 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 525-27 (1985)). DOFF's rights under the anti-SLAPP statute are in the nature of immunity: They protect the defendant from the burdens of trial, not merely from ultimate judgments of liability. *Id.* at 1025. The District Court's Order is a more extreme deprivation of this right than presented in *Batzel* and *Mitchell* where DOFF was denied its rights to even assert this immunity from suit via anti-SLAPP motion. As such, that Order is

7

similarly appealable.

The District Court's Order is also appealable as being inextricably intertwined with its Order, appealed from by Taitz, denying her anti-SLAPP motion to strike (in Case No. 13-56253). The Ninth Circuit permits the exercise of appellate jurisdiction over otherwise non-appealable orders that are "inextricably intertwined" with another order that is properly appealable. *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1296-97 (9th Cir. 1999). It requires that the two issues: "(a) be so intertwined that we must decide the pendent issue in order to review the claims properly raised on interlocutory appeal . . . or (b) resolution of the issue properly raised on interlocutory appeal necessarily resolves the pendent issue." *Cunningham v. Gates*, 229 F.3d 1271, 1284-1285 (9th Cir. 2000).

Assuming for the sake of argument only that the Order appealed from is non-appealable, then DOFF's appeal may still proceed under this second standard. Should this Court in Taitz's appeal decide that Plaintiffs's action is to be dismissed under the anti-SLAPP statute, this would necessarily resolve the pendent issue of whether DOFF is entitled to dismissal of the action via anti-

8

SLAPP motion. *Mendocino Envtl. Ctr.*, at 1296-97. *Cunningham*, at 1284-1285.

**B.    As a Matter of Law in the Ninth Circuit, California's Anti-SLAPP Law is Regarded as Substantive in Nature, and is Thus Available in Diversity Cases**

Plaintiffs argue that California's anti-SLAPP procedure is a matter of state law procedure which is not available in Ninth Circuit. (AB, p14    .) Plaintiffs cite to the concurring opinions in *Makaeff v. Trump University, LLC*, 715 F.3d 254 (9th Cir. 2013). However, the concurring opinions in *Makaeff* do not state the law of the Ninth Circuit on this issue.

The majority opinion in *Makaeff* states the law on this subject, following longstanding Ninth Circuit law that "Motions to strike a state law claim under California's anti-SLAPP statute may be brought in federal court." *Makaeff*, 715 F.3d at 261 (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003)).

The concurring opinions argued that *United States ex rel. Newsham v. Lockheed*

*Missiles & Spice Co.*, 190 F.3d 963 (9th Cir. 1999), was incorrectly decided and should be reconsidered. *Makaeff*, 715 F.3d at 272-276. However, *Newsham*, *Vess* and similar cases remain the law in the Ninth Circuit, that motions to strike under California's anti-SLAPP statute continue to be available in the Ninth Circuit.

This Court in *Makaeff v. Trump Univ., LLC,* 736 F.3d 1180, (9th Cir.2013), denied Trump University's petition for rehearing en banc, holding that:

> Through anti-SLAPP laws, the legislatures of Arizona, California, Guam, Hawaii, Nevada, Oregon, and Washington have decided to impose substantive limitations on certain state law actions. See Thomas R. Burke, Anti-SLAPP Litigation App. B (2013) (listing the text of each state's anti-SLAPP statute). Refusing to recognize these limitations in federal court is bad policy. If we ignore how states have limited actions under their own laws, we not only flush away state legislatures' considered decisions on matters of state law, but we also put the federal courts at risk of being swept away in a rising tide of frivolous state actions that would be filed in our

10

circuit's federal courts. Without anti-SLAPP protections in federal courts, SLAPP plaintiffs would have an incentive to file or remove to federal courts strategic, retaliatory lawsuits that are more likely to have the desired effect of suppressing a SLAPP defendant's speech-related activities. Encouraging such forum-shopping chips away at "one of the modern cornerstones of our federalism." *Hanna*, 380 U.S. at 474 (Harlan, J., concurring). *Makaeff,* 736 F.3d at 1187.

Plaintiffs' unsupported contentions to the contrary, based on the concurring opinions in *Makaeff*, must be rejected.

**C.     California's Anti-SLAPP Law is Applicable Herein Regardless of the Transfer of the Case From the United States District Court for the Eastern District of Pennsylvania**

Plaintiffs make a new argument for their first time in their Answering Brief, that because this case was commenced in the Eastern District of Pennsylvania, and transferred to the Central District of California under 28 U.S.C. ' 1404(a), the

11

substantive law of Pennsylvania, not California, is applicable to this case. Plaintiffs go on to argue, also for the first time, that California's anti-SLAPP statute as a substantive law does not apply herein. (AB, p20.)

As shown, Plaintiffs' argument is not only incorrect as a matter of law, they have also waived and are estopped to raise it for the first time in this appeal.

1.    **Where the Case Was Transferred, in Part, to California to Cure a Lack of Personal Jurisdiction over California-Based Defendants, California Substantive Law Including its Anti-SLAPP Statute Apply**

Plaintiffs' argument ignores the basis on which the case was split into two cases, one of which was transferred to the District Court for the Central District of California as to the California-based Defendants (including DOFF and Taitz).

The case was transferred to cure a lack of personal jurisdiction in the District Court in Pennsylvania, as to the California and Texas-based Defendants. For example, DOFF and Taitz brought a motion to dismiss the case for lack of

12

personal jurisdiction. [See, **Exhibit A** to DOFF's concurrently-filed Request for Judicial Notice (RJN).]

The District Court in Pennsylvania made an Order issuing a rule upon Plaintiffs to show cause why their action should not be dismissed for lack of personal jurisdiction, should not be severed into three or more cases, or should not be transferred to Texas or California (**Exhibit B** to RJN.)

The District Court issued an Order pursuant to 28 U.S.C. Section 1404(a) severing the case into two actions, one being transferred to California against the California-based Defendants, and the other to Texas against the Texas-based Defendants. (**Exhibit C** to RJN.) The Court then issued an amended Order for the same relief. (**Exhibit D** to RJN.)

Cases may be transferred under 28 U.S.C. Section 1404(a) to cure a lack of personal jurisdiction in the transferor district. *Nelson v. International Paint Co.*, 716 F.2d 640, 643 (9th Cir. 1983). When so transferred, the law of the transferee district, including its choice-of-law rules, is applicable. *Ibid. Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 967 (9th Cir.1993). *Manley v. Engram*, 755

13

F.2d 1463, 1467 & n.10 (11th Cir. 1985).

A transferor court need not have personal jurisdiction over the defendants in order to transfer a case under 28 U.S.C. Section 1404(a). A transfer under Section 1404(a) can be used to cure a lack of personal jurisdiction. *Nelson v. Int'l Paint Co.*, 716 F.2d 640, 643 (9th Cir. 1983).

When venue is improper in transferor court, the transferee court should apply law of state in which it sits. *Davis v Louisiana State University*, 876 F.2d 412, 415 (5th Cir.1989). Where transfer was in part due to lack of personal jurisdiction over defendants, the transferee district's laws shall control. *Burt v Danforth*, 742 F. Supp. 1043, 1046 (E.D. Mo. 1990).

For these reasons, where the case was transferred to cure a lack of personal jurisdiction in the District Court in Pennsylvania pursuant to 28 U.S.C. Section 1404(a), the substantive law of California applies, which includes its anti-SLAPP statute. *Nelson*, 716 F.2d at 643. *Muldoon*, 1 F.3d at 967.

      **2.**    ***Van Dusen v. Barrack**, 376 U.S. 612, 84 S.Ct. 805, 11*

**L.Ed.2d 945 (1964) Does Not Apply Herein Where the Case Was Transferred, in Part, to California to Cure a Lack of Personal Jurisdiction over California-Based Defendants**

Plaintiffs rely on *Van Dusen* for their erroneous argument that transfer of the case, in part, to California requires that Pennsylvania substantive law continues to apply. (AB, p21  .) The Ninth Circuit, and other Circuits, distinguish between cases which have been transferred for the convenience of the parties, and those cases which have been transferred due to a defect in personal jurisdiction. As held in *Nelson*:

> In the latter type of cases, however, it is necessary to look to the law of the transferee state, also to prevent forum shopping, and to deny plaintiffs choice-of-law advantages to which they would not have been entitled in the proper forum. See, e.g., Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc., 689 F.2d 982, 991-93 (11th Cir. 1982); Ellis v. Great Southwestern Corp., 646 F.2d 1099, 1103-11 (5th Cir. 1981); Reyno v. Piper Aircraft Co.,

15

630 F.2d 149, 165 (3d Cir. 1980), rev'd on other grounds, 454 U.S.

235, 70 L. Ed. 2d 419, 102 S. Ct. 252 (1981); Martin v. Stokes, 623

F.2d 469, 472-73 (6th Cir. 1980); see also 1 Moore, Federal

Practice para. 0.145[4.-5]; Note, 63 Corn. L. Rev. 149, 160 (1977).

The present case falls in the latter category, since the case was

transferred because there was no personal jurisdiction in Texas over

Calco. Thus, the laws of the transferee state, California, should

govern the case. *Nelson*, 716 F.2d at 643.

Our case, as explained, falls squarely into this exception to the application of

*Van Dusen* such that California substantive law, and not that of Pennsylvania,

controls herein. Because Pennsylvania law does not apply, its anti-SLAPP

statute, cited by Plaintiffs, is clearly inapplicable herein.

Plaintiffs also cite to *Muldoon*. (AB, p21  .) As explained, *Muldoon* discusses

the exception to *Van Dusen* applicable herein, and thus does not support

Plaintiffs's argument.

### 3.      Plaintiffs Have Waived and Are Estopped to Make Their

16

**New Argument That Pennsylvania Substantive Law Controls Herein, Including That California's Anti-SLAPP Statute Does Not Apply**

Plaintiffs' new argument is made for the first time in their Answering Brief, and has thus been waived. Further, they have repeatedly represented, including in their First Amended Complaint, that California substantive law applies and are thus estopped to make such argument.

17

Arguments presented for the first time on appeal will not be considered. *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1063 n.3 (9th Cir. 2007). *Diamond Door Co. v. Lane-Stanton Lumber Co.*, 505 F.2d 1199, 1206 (9th Cir. 1974).

Plaintiffs failed to previously make their argument under *Van Dusen*, despite numerous opportunities to have done so. These include in opposition to DOFF's and Taitz's anti-SLAPP motion challenging their Complaint, in the appeal regarding the Order on that Motion, nor in opposition to Taitz's anti-SLAPP motion to their First Amended Complaint.

In fact, Plaintiffs have represented that California substantive law controls, both in their First Amended Complaint and in their request for leave to file it, brought in June 2011. For example, the bulk of the claims made in that Complaint are based upon California substantive law, including but not limited under the California Information Practices Act, California Investigative Consumer Reporting Agencies Act, and California Business & Professions Code Section 17200. Numerous Sections of the California Civil Code are cited throughout the First Amended Complaint.

18

By contrast, no claims are made in the First Amended Complaint based on Pennsylvania law.

(*If* Plaintiffs' new argument is found to be correct, this would mean that the bulk of their claims must be dismissed where they would then be based on inapplicable California law.)

Plaintiffs had to seek and obtain leave to file their First Amended Complaint, pursuant to their motion for that relief. (**Exhibit E** to RJN in consolidated case 13-56253.) They represented  that they had to file a new Complaint due to the case being transferred to California. For example, they stated: Plaintiffs originally filed suit on May 4, 2009 in the U.S. District Court, Eastern District of Pennsylvania. Defendants moved to have the case transferred to this District, which Plaintiffs conceded to and filed their own Motion for the transfer. The case has since been transferred to this Court, where all the Defendants are located. None of the Plaintiffs reside in the State of California. Therefore, Plaintiffs' Complaint is **not** compliant with the California laws. (Motion, pgs. 3-4; emphasis in original.)


Plaintiffs thus represented that California law controls, and they had to obtain leave to make their claims compliant with the California laws. The District Court agreed, and allowed Plaintiffs to present their California law based claims. Plaintiffs allege

19

supplemental jurisdiction to consider claims arising under California State Law....

[2, ER 368.]

Plaintiffs make a further new argument, not raised in the District Court, that they had a right to request permission to file a curative amended complaint. However, they did *not* request leave to file a Second Amended Complaint (presumably presenting claims under Pennsylvania law), and have therefore waived that argument.

Plaintiffs relatedly complain that they were denied an opportunity to seek leave to file a Second Amended Complaint, and argue that they were foreclosed from doing so where Taitz brought an anti-SLAPP motion and not an Fed. R. Civ. P. Rule 12(6) motion. Plaintiffs are incorrect. First, the Ninth Circuit allows amendment, if otherwise proper, in the face of challenge via anti-SLAPP motion. *Verizon Del., Inc. v. Covad Communs. Co.*, 377 F.3d 1081, 1092 (9th Cir. Cal. 2004). Plaintiffs are aware of this where, in the face of Taitz's anti-SLAPP motion to their initial Complaint, they sought and obtained leave to file their First Amended Complaint to make their claims compliant with the California laws. Second, Plaintiffs did not seek leave to file a Second Amended Complaint, and have thus waived this

20

argument.

The purpose of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689, 39 L. Ed. 578, 15 S. Ct. 555 (1895).

## II.

## Plaintiffs Fail to Show That Taitz's Conduct as Alleged in Their First

## Amended Complaint Does Not Come Within California's Anti-SLAPP Law

As shown in Taitz's Opening Brief, Plaintiffs in their FAC allege numerous examples of her conduct squarely coming within California's anti-SLAPP statute as protected activities. These include the following:

21

### A.    Taitz allegedly made "written or oral statement[s]@ coming within Section 425.16(e)(1)

Taitz cites numerous examples of alleged acts within Section 425.l6(e)(1) including that she reported on crime and fraud protected under the anti-SLAPP statute. [2 ER, 382, 393-394, 410-411.]  *Gardner v. Martino*, 563 F.3d 981, 989 (9th Cir. 2009). *Obsidian Finance Group, LLC v. Cox*, 740 F.3d 1284 (9th Cir. 2014).

Plaintiffs attempt to take these undisputed "statement[s] or writing[s]" by mislabeling  them as "false" speech and petitioning activities. (AB, 22.) In this regard, they argue that *Wang v. Hartunian*, 111 Cal.App.4th 744 (2003) is inapposite by misrepresenting an argument made by Defendant/Respondent Hartunian as being the holding of the Court of Appeal. In fact, the portion of the decision relied on by Plaintiffs merely quotes from Hartunian's argument, and is not the Court's decision. *Wang*, 111 Cal.App.4th at 748-749.

The Court in *Wang* did not, as Plaintiffs misrepresent, hold that making a report to police is not protected activity under Section 425.16(e)(1). It did not adopt Hartunian's argument. However, it did hold that "we agree that a report to police is subject to the privilege of Civil Code section 47, subdivision (b)...."

22

*Wang*, 111 Cal.App.4th at 749. Thus, *Wang* applies herein and requires dismissal of Plaintiffs' claims based upon privileged publications by Taitz on which such claims are based.

As a matter of law, communications privileged under Cal. Civ. Code Section 47(b) are protected under the anti-SLAPP statute. See, *Johnson v. Ralphs Grocery Co.*, 204 Cal.App.4th 1097 (2012). See, also, *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal.4th 1106, 1115 (1999). Thus, because Taitz's publications alleged by Plaintiffs are without question covered by the litigation privilege, they are also as a matter of law protected under Section 425.16(e)(1).

Plaintiffs cite *Lefebvre v. Lefebvre*, 199 Cal.App.4th 696 (2011) for the proposition that "the filing of false police reports with law enforcement agencies is not protected activity within under the anti-SLAPP statute...." (AB, 23.) In it, defendant "does not contest that she submitted an illegal, false criminal report" and thus that she engaged in "an illegal activity...." *Lefebvre*, 199 Cal.App.4th at 705-706. Here, Plaintiffs make no showing that there was anything "false" about the report submitted by Taitz to authorities regarding Liberi's violation of the terms of her probation, and she disputes Plaintiffs= contentions.

The Court in *Dwight R. v. Christy B.*, 212 Cal.App. 4th 697 (2013) distinguished *Lefebvre* in a manner exposing the fallacy on which Plaintiffs'

23

position is based:

> But when the defendant's assertedly protected activity may or may not be unlawful, the defendant may invoke the anti-SLAPP statute unless the activity is unlawful as a matter of law. [Gerbosi v. Gaims, Weil, West & Epstein, LLP, 193 Cal.App.4th 435, 446 (2011).] An activity may be deemed unlawful as a matter of law when <u>the defendant does not dispute that the activity was unlawful, or uncontroverted evidence conclusively shows the activity was unlawful</u>.... *Dwight R.*, 212 Cal.App. 4th at 711-712; emphasis in original and added.

Here, similarly, just because Plaintiffs allege that Taitz's report to law enforcement authorities was "false" is irrelevant and does not take her alleged actions outside the protection of the anti-SLAPP statute. *Id.* at 712. Thus, Taitz clearly engaged in conduct within Section 425.16(e)(1).

## B. Taitz allegedly made "written or oral statement[s]@coming within Section 425.16(e)(2)

Taitz cites numerous examples of alleged acts within Section 425.16(e)(2). [See, 2 ER, 382.] Plaintiffs again mischaracterize Taitz's free speech and

petitioning activities as "false,"(AB, 23) but this as a matter of law is irrelevant to whether they come within the anti-SLAPP statute. *Gerbosi*, 193 Cal.App.4th at 446. *Dwight R.*, 212 Cal.App. 4th at 711-712

Plaintiffs' only argument respecting Section 425.16(e)(2) is to question the meaning of "under review." (AB, 23.) They cite one case, *Weinberg v. Feisel*, 110 Cal.App.4th 1122 (2003), for their argument. *Weinberg* had nothing to do with this issue. The issue presented in *Weinberg* concerned the meaning of "public interest" under Section 425.16 (e)(3) and (4). *Id.* at 1133. There is no discussions in *Weinberg* regarding Section 425.16(e)(2) nor its "under review" language.

Further, the meaning of "public interest" is irrelevant to application of Section 425.16 (e)(1) and (2), which do not require any showing of "public interest." *Briggs*, 19 Cal.4th at 1116в1117. Thus, Plantiffs' reliance on *Weinberg* is clearly misplaced, and is an admission that Taitz's conduct alleged in the FAC comes squarely within Section 425.16 (e)(2).

Taitz's alleged acts and statements unquestionably were "made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law .... " This included, but is not limited to, Taitz allegedly contacting Liberi's probation officer in New Mexico, and the San Bernardino County District Attorney, seeking redress for Liberi's

25

violation of her probation. [2 ER, 410-411.] Although the Court in Liberi's criminal action ultimately did not revoke her probation, the issue was clearly "under consideration or review" by a "judicial body... authorized by law...." and thus as a matter of law within Section 425.16 (e)(2).

## C.    Taitz allegedly made "written or oral statement[s] or writing[s]@ coming within Section 425.16(e)(3)

Plaintiffs allege that Taitz made written and oral statements "in a place open to the public or a public forum" (such as various websites, blogs and other media) "in connection with an issue of public interest" (including as to the political dissident movement and associated fundraising). [2 ER, 382-412.]

Here, Plaintiffs do not dispute the immense public interest generated in connection with the Birther Movement, and directed toward figures in that movement including Taitz and Philip J. Berg, and his assistants, Liberi and Ostella. By any measure, Taitz's speech thus involved issues of public interest. *Damon v. Ocean Hills Journalism Club*, 85 Cal.App.4th 468, 472 (2000). *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal.App.4th 1027, 1042 (2008).

Plaintiffs do not dispute that radio broadcasts and web sites as a matter of law are "public forum[s]" under Section 425.l6(e)(3). *Troy Group, Inc. v. Tilson*, 364 F.Supp.2d 1149, 1153 (2005).

26

Plaintiffs also do not dispute that statements informing the public of crimes and fraud presented matters of public concern. *Gardner v. Martino*, 563 F.3d 981, 989 (9th Cir. 2009). In particular, Plaintiffs ignore the controlling authority of cases such as *Obsidian*, in which this Court held that an internet blogger's reports of crime and fraud being committed by attorneys were matters of public concern.

Like the blogger in *Obsidian*, Taitz's alleged speech on the Internet was "published to public at large," was not a matter only of private concern, and addressed issues which are, as a matter of law, of public concern informing the public of crimes and fraud. *Obsidian*, 740 F.3d at 1291-1292. *Gardner*, 563 F.3d at 989.

Plaintiffs fail to discuss (or even cite) these cases, thus admitting that they control herein and require a finding that Taitz's alleged speech and writings satisfy the "public interest" component of "written or oral statement[s] or writing[s] made in a place open to the public or a public forum in connection with an issue of public interest" of Section 425.l6(e)(3).

Plaintiffs' sole argument is that whether speech concerns an issue of public interest is determined on the status of the plaintiff; that is, speech raises a public interest if the plaintiff is a "public figure" under defamation law. (AB, 24.) Plaintiffs cite *Hutchinson v. Proxmire*, 443 U.S. 111, 135, 99 S.Ct. 2675, 61

27

L.Ed.2d 411 (1979) for this argument. (*Ibid.*) *Hutchinson*, obviously, has nothing to do with anti-SLAPP issues, including where California's anti-SLAPP statute was enacted in 1992, thirteen years after *Hutchinson* was decided.

Plaintiffs also cite *Rivero v. American Federation of State, County, and Municipal Employees*, AFL-CIO, 105 Cal.App.4th 913 (2003). (AB, 24.) *Rivero* involved a supervisor accused of favoritism by union members. The union contended the supervisor's actions raised a matter of public interest, but the Court disagreed where the controversy only involved a total of nine persons and the supervisor's actions did not raise any issue of public interest. *Id.* at 924-925.

*Rivero* is inapposite. Here, Taitz's alleged speech included interviews to talk radio programs, and posting on the Internet, that Liberi's and Ostella's activities were hindering the political dissident movement, including its Birther Movement component, and regarding diversion of funds belonging to DOFF. [2 ER, 382-412.] This was heard and read by thousands of persons, all in the broader context of dispute over leadership of the political dissident movement, with its relationship to the qualifications of Barack Obama to be President.

28

Moreover, the key factor in whether speech concerns a "public interest" is the context in which it is made, and including the impact it has or may have on a significant portion of the public. *Damon*, distinguished in *Rivero*, illustrates this principle. In *Damon*, a dispute arose between residents of a planned development and its general manager. Plaintiff sued for defamation arising out of members' newsletter criticizing him, and urging that he be removed. The appellate court affirmed granting of defendants' anti-SLAPP motion, allegedly defamatory statements concerned "'issue[s] of public interest.'" *Damon*, 85 Cal.App.4th at 478. The court explained that "[t]he definition of 'public interest' within the meaning of the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity. [Citations.]" *Id.* at p. 479.

Here, Taitz's alleged speech concerned issues of "public interest" and were disseminated to many thousands of people, in a manner thus impacting a much broader "segment of society" than presented in *Damon*.

Moreover, there was no discussion in *Damon* about whether plaintiff was a public figure. Section 425.l6(e)(3) was held to apply based on the context of the speech at issue, not the status of plaintiff. Numerous other cases under the anti-SLAPP statute provide the same, that whether defendant's speech is protected

is determined based on the issues raised, and the context in which they are raised, and not on plaintiff's status. *Du Charme v. International Brotherhood of Electrical Workers*, 110 Cal. App. 4th 107, 109 (2003). Taitz clearly meets this standard.

### D.    Taitz allegedly engaged in "any other conduct coming within Section 425.16(e)(4)

Taitz's alleged acts and statements qualify as protected activity under Section 425.16(e)( 4) for the same reasons, explained above, that they are protected activity under Section 425.16(e)(3). The meaning and application of "public interest" under Section 425.16(e)( 4) is the same as under subsection (e) (3). *Tuchscher v. San Diego Unified Port Dist.*, 106 Cal.App.4th 1219, 1233 (2003). Plaintiffs do not separately discuss application of Section 425.16(e)(4).


### III.


## Plaintiffs Fail to Meet Their Burden to Demonstrate a Probability That They


## Will Prevail on Their First Amended Complaint

This part of the reply contained in the consolidated brief  by Appellant Orly Taitz in case 13-56253.


In addition to the arguments contained in consolidated case 13-56253, DOFF would like to add just a couple of examples, illustrating how egregious is fraud and misrepresentation perpetrated by the plaintiffs, which not only indicates that the appeal should be granted, but makes Plaintiffs' conduct sanctionable.

On May 5, 31, 2013 Stephen Marcus, who at a time claimed to be an attorney representing all the plaintiffs,  filed an opposition to antiSLAPP, where he claimed that Liberi's state citizenship was established. Marcus wrote:  "Liberi has shown her driver's  license to Judge Robreno in camera, and is willing to do the same to this Court"[ 1 ER, 276.] This is not just an egregiously fraudulent statement, a bald lie, but also an accusation of an unethical behavior, allegedly committed by the prior judge on the case, Eduardo Robreno, of the Eastern District of PA, where Judge Robreno was accused of some ex parte meeting with the plaintiffs and examination of Liberi's driver's license in camera.  In reality, the docket shows that there was no such in camera examination of Liberi's driver's license by Judge Robreno.  If there would have been  an in-camera examination, there would have been a notation in  the docket of the case that on a certain day Judge Robreno conducted an in camera examination of Liberi's drivers license and established her to be a citizen of a certain state and the

31

name of the state would be listed.  There is no such notation anywhere in the docket of the case.

Further, just as there is no evidence of any in camera examination of Liberi's driver's license, there is no evidence anywhere in the case of Liberi, Ostella and GoExcelGlobal ever signing any substitution of attorney, allowing Stephan Marcus, or Gittler and Bradford or anyone else for that matter, to represent them instead of their former attorney, Phillip Berg, whose bar licensed was suspended for two years in 2013.  This issue was raised in the appellant's opening brief and plaintiffs never provided this court with any substitution of attorney signed by Liberi, Ostella and GoExcelGlobal.

Moreover, plaintiffs/appellees Berg and Law offices of Philip Berg never filed an Appellees' brief and never opposed the Appeal and as such conceded to the fact the complaint on their behalf should be dismisses. Additionally, Philip Berg did not file any opposition to the fact that Law Offices of Philip Berg do not exist as an independent legal entity and never existed.

Plaintiffs never contradicted the evidence showing that GoExcelGlobal does not exist and its' corporal license was revoked in 2012, as such the complaint from non-existent company, GoExcelGlobal, should be dismissed.

Further, the complaint filed in 2009 listed Liberi's address in Pennsylvania and purported to show that Lisa Liberi is a different person, not a felon convicted in California in  2009 of 10 felony counts of grand theft, forgery of an official seal and

tender of forged/altered instruments to file, but a different person, different Lisa Liberi, who was working in the law office of Philip Berg in Pennsylvania as a paralegal/legal assistant and was defamed by the revelations. During December 20 2010 motion hearing Liberi admitted that she is a convicted felon from California and Ostella admitted that she, as a former web master for DOFF, locked Taitz, president of the foundation out of the web site of DOFF and replaced Taitz pay-pal account with her own, whereby, any donations given through pay-pal linked to the old web site, after Taitz was locked out, did not go to DOFF, but went to Ostella.

After these admissions, plaintiffs filed their first amended complaint, where they no longer denied the aforementioned facts. Now, in her appellee's brief Liberi does not deny that she is a convicted felon, but she attempts to misrepresent her criminal history. Plaintiffs state that her criminal record consists of a "single proceeding in 2001" [AB, 45], which is again a flagrant, egregious fraud.

Public record on line of the Superior court of California, San Bernardino County http://openaccess.sb-court.org/OpenAccess/CRIMINAL/criminalnames.asp?deflastname=LIBERI&bus =N&defmidname=&deffirstname=LISA&defdob=&courtcode=X&filedatefrom=& filedateto=&limit=50&DSN=

shows two criminal cases for Lisa Liberi:

1. Case FSB 044914, Defendant 1608112, Liberi, Lisa R with four felony charges filed on 11.15.2002, which include PC 115(a), offer/etc false/forged instrument to file, two charges PC 470 (d)  forgery, PC 472  forgery of an official seal. Status of the case "ACTIVE"

2. Case FWV 028000 Defendant 1608112 Liberi Lisa R, with 23 felony charges, sentencing 03.21.2008. Record shows a total of eight years prison conviction, whereby Liberi was supposed to be in prison until 03.21.2016. Prison term was suspended  and Liberi served 36 months probation. Some 87 pages of public record of proceedings show multiple proceedings for seven years since 2001. Breakdown of her eight year suspended prison term show Liberi pleading guilty and being convicted in ten out of twenty three felony charges, which included multiple convictions of grand theft, forgery of an official seal and offer forged/false instrument to file. This is yet another example of egregious fraud. Plaintiffs and their alleged attorney, Stephen Marcus, clearly knew that there were seven years of multiple proceedings on a total of twenty seven felony charges in two cases  and eight years suspended prison term in 2008. As such, their claim of "one proceeding in 2001" is a flagrant fraud. These instances of flagrant fraud  reinforce the point that Plaintiffs simply filed a SLAPP law suit to silence Taitz as they did not want the public to know that Philip Berg, an attorney who filed legal

34

actions against Barack Obama and submitted to courts certain affidavits from Africa, claiming Obama was born there, is using a convicted forger as his paralegal, whereby there is a serious question of credibility of documents submitted by Berg and Liberi to courts. [2 ER, 365-536.]

Further, they filed this case to quash Taitz free speech and quash disclosures that Taitz, as the President of DOFF, was obligated to make to donors of DOFF that the old web site for DOFF was taken over by the former web master, Ostella, that donations made on old DOFF web site will not go to DOFF and that the old web site is being used to promote another attorney, Berg, who is using as his paralegal, Liberi, recently convicted on multiple charges of grand theft and got eight year suspended sentence. Plaintiffs filed this AntiSLAPP law suit, as they were concerned that they will lose donations and will lose credibility in their legal challenges of national importance.

# IV.

## <u>Conclusion</u>

As demonstrated, DOFF  clearly met its' burden to show protected activity under California's anti-SLAPP statute. Plaintiffs failed to meet their burden under Section 425.16 (b) to establish "a probability that the plaintiff will prevail on the claim...." Thus, DOFF respectfully submits that the Order denying DOFF's request to even file a motion to dismiss the First Amended Complaint under the AntiSLAPP  should be reversed.

**09.23.2014**

**/s/ Orly Taitz, Counselor for DOFF**

29839 Santa Margarita ste 100

Rancho Santa Margarita CA 92688

949-683-5411 Fax 949-766-7687

Orly.taitz@gmail.com

**CERTIFICATE OF COMPLIANCE**

This brief contains 6,622 words, the brief does not exceed allowed 7,000 words. This brief complies with the typeface requirements of Fed. R. App. P. Rule 32(a)(5) and the type style requirements of Fed. R. App. P. Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect in Times New Roman font size 14.

/s/ Orly Taitz, Counselor for DOFF

09.23.2014

Certificate of service

I, Orly Taitz, attest that all the parties in this case were served by ECF on 09.23.2014

/s/ Orly Taitz,

Counselor for DOFF

09.23.2014